**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

RESTAURANT LAW CENTER,

NATIONAL RETAIL FEDERATION,

AMERICAN HOTEL & LODGING ASSOCIATION,

and

INTERNATIONAL FRANCHISE ASSOCIATION,

Plaintiffs,

v.

AARON BINDER, In His Official Capacity as Treasurer of the State of New Jersey,

and

KEVIN D. JARVIS, In His Official Capacity as Acting Commissioner of the New Jersey Department of Labor and Workforce Development,

Defendants.

**Case No. 26-cv-10636**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## PRELIMINARY STATEMENT

1. On June 30, 2026, the New Jersey Legislature passed Assembly Bill 5324, (the "Employer Healthcare Assistance Contributions Act" or the "Act") which was signed by Governor Sherrill as part of the State's 2027 Appropriations Act. The Act requires employers in New Jersey with 50 or more employees enrolled in the State's Medicaid program to pay a fee to the State for each employee and each of the employee's dependents who receive Medicaid benefits.[1] A copy of the Act is attached hereto as Exhibit 1.

2. The stated purpose of the Employer Healthcare Assistance Contributions Act is to require employers to cover all of their employees (and any dependents) in employer-sponsored health care plans, regardless of the plans' eligibility requirements. Indeed, Governor Sherrill expressly stated that the purpose of the Act was to "ask any company with 50 or more employees on Medicaid . . . to cover their workers, which they should do anyway, or pay a fine." Governor Sherrill Fiscal Year 2027 Budget Address (Mar. 10, 2026), https://www.nj.gov/governor/news/2026/20260310a.shtml.

3. In voting to advance the Act, the Chair of the New Jersey Senate Budget and Appropriations Committee expressly identified that the legislation raised serious legal concerns:

> I know it is part of the budget deal, so I don't want to get in the way of the budget deal, but I respect that a few members have abstentions, I'm going to vote to remove it out of committee, to allow this budget framework. **I truly believe they got some serious legal implications**

---

[1] Governor Sherrill referred to the fees in her budget as "Employer Healthcare Assistance Contributions." *See The State of New Jersey Budget in Brief Summary of Budget Recommendations* at 53, https://www.nj.gov/treasury/omb/publications/27bib/BIB.pdf (last visited on August 19, 2026).

> **with this bill.** But for purposes of tonight, we will move this forward. (emphasis added)

*See Senate Budget and Appropriations Hearing*, Senator Paul A. Sarlo at 1:23:53 (June 28, 2026), *https://www.njleg.state.nj.us/archived-media/2026/SBA-meeting-list/media-player?committee=SBA&agendaDate=2026-06-28-19:00:00&agendaType=M&av=V*.

4. There are three reasons why the Court should declare that the Employer Healthcare Assistance Contributions Act violates federal law and is null and void.

5. First, the Act is an unlawful intrusion on the comprehensive federal framework governing the establishment, administration, and regulation of employer-sponsored health benefit plans and, accordingly, is preempted by the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

6. Second, the Act violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. The law does not provide a meaningful opportunity for an employer to obtain a determination of the accuracy and validity of the fee assessed against the employer and instead invites arbitrary enforcement of the law. As described below, the law only requires the New Jersey Department of the Treasury's Division of Revenue and Enterprise Services to inform employers of the purported number of employees and dependents enrolled in the Medicaid program, without providing their names or other information the employer would need to verify whether the employer was properly and accurately assessed the correct fee and, if necessary, to appeal the fee assessed by the State. Further, the Act prohibits the State from disclosing individually identifiable information about the employees and dependents for whom the employer was assessed a fee, thereby rendering any appeal rights meaningless. The Act is also otherwise void for vagueness.

7. Third, employers do not know if their employees or their dependents are enrolled in Medicaid, or know whether the employees or their dependents incurred medical claims paid by Medicaid and, as such, actually "received State Medicaid benefits," under the Act. Based on the burden of proof that the Act imposes on employers who seek to appeal the assessment, the Act requires employers to inquire about the health status of employees and dependents and, in doing so, violate federal privacy laws.

8. Through this action, Plaintiffs seek a declaration that the Act is preempted by ERISA, violates the Due Process Clause of the Fourteenth Amendment, and violates the Supremacy Clause of the United States Constitution. Plaintiffs also seek an injunction to prevent enforcement of the Act, as well as all other relief provided by law.

**PARTIES**

9. The following associations ("Plaintiffs") have at least one member who (a) was previously identified by the State as purportedly having 50 or more employees enrolled in the State's Medicaid Program,[2] or (b) is otherwise subject to the Employer Healthcare Assistance Contributions Act:

- The Restaurant Law Center (RLC) is the only independent public policy organization created specifically to represent the interests of the food service industry in the courts. While the RLC is its own independent organization with its own Board of Directors, all members in good standing with the National Restaurant Association and State Restaurant Associations are members of the RLC. As such, the RLC represents a labor-intensive industry comprised of over one million restaurants and other food-service outlets employing about 16 million people—approximately 10 percent of the U.S. workforce, including restaurants operating in New Jersey. Through amicus participation and first party litigation, the RLC serves as the industry's voice in the judicial system and offers courts and regulatory agencies with the industry's

[2] *See* New Jersey Department of Human Services, *2024 Annual Report on Access to Employer-based Health Insurance*, https://www.nj.gov/humanservices/documents/2024%20S539%20report%20and%20appendices%20for%20publicaton%20on%20dhs%20website.pdf (last visited Aug. 19, 2026) (State report identifying nearly 750 New Jersey private-sector employers who purportedly had 50 or more employees enrolled in the State's Medicaid program).

perspective on significant legal and regulatory issues to ensure that the views of America's and New Jersey's restaurants are taken into consideration. The Act directly and substantially affects RLC's members who operate in New Jersey.

- The National Retail Federation (NRF) is the world's largest retail trade association and the voice of retail worldwide. NRF's membership includes retailers of all sizes, formats, and channels of distribution, spanning virtually every industry that sells goods and services to consumers. Many of NRF's members maintain, administer, and/or provide services to employee benefit plans governed by the Employee Retirement Income Security Act of 1974 (ERISA). As a result, NRF and its members have a significant interest in preserving ERISA's uniform national framework for the administration of employer-sponsored benefit plans and preventing state laws from imposing conflicting requirements on those plans. NRF has represented the interests of the retail community on dozens of issues, including matters involving ERISA and employer-sponsored benefits.

- The American Hotel and Lodging Association (AHLA) is the national trade organization for the domestic hotel industry. With over 30,000 members, AHLA represents all segments of the U.S. lodging industry, including global brands, hotel owners, franchisees, real estate investment trusts, management companies, independent properties, bed and breakfasts, state hotel associations, and industry suppliers. The industry is vital to the nation's economic health. By supporting over 9 million employees, the industry provides over $130 billion in wages and salaries to our associates and generates nearly $900 billion in economic activity from the 60,000 hotels across the country. The lodging sector is largely composed of small businesses, which make up the majority of properties nationwide. In New Jersey, the nearly 1,200 hotels directly employ nearly 50,000 workers, and account for almost $3 billion in wages and salaries, in addition to over $15 billion in economic impact across the state. AHLA has a significant interest in this case because the Act imposes substantial new burdens on hoteliers. AHLA is also concerned that allowing the law to stand could create a patchwork of requirements that disrupts the uniform administration of federally-governed benefit plans nationwide.

- The International Franchise Association (IFA) is the world's oldest and largest trade association devoted to representing the interests of franchising. Founded in 1960, IFA's membership includes franchisors, franchisees, and suppliers, and IFA serves as a voice for both franchisors and franchisees throughout the United States. Through its public policy work, IFA protects, enhances, and promotes franchising on behalf of more than 1,400 brands in more than 300 business categories, including, among others, food service, retail, hospitality, health and fitness, residential services and business services. Nationally, IFA's 2026 Franchising Economic Outlook projects approximately 845,000 franchised establishments, nearly 8.9 million jobs, and $921.4 billion in economic output. In New Jersey, IFA's members operate approximately 22,340 franchised establishments, supporting nearly 236,000 jobs and $24.3 billion in annual economic output. IFA has a substantial interest in this case because its members are directly affected by the interpretation and application of Section 514(a)

of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(a), and by the per-capita employer fee enacted at P.L. 2026, c. 23, Assembly Bill No. 5324. IFA's franchisee members are overwhelmingly small, independently owned businesses without dedicated in-house counsel, human resources departments, or benefits staff. They are also concentrated in the sectors like quick-service restaurants, hospitality, personal services, and residential services that depend most heavily on part-time, seasonal, and entry-level workforces. The fee accordingly reaches franchised businesses with an impact disproportionate to their size, their margins, and their practical capacity to restructure employee health coverage in response. Those businesses bear a common brand but are separately owned and operated, setting their own compensation, making their own hiring decisions, and sponsoring their own benefit plans.

10. Plaintiffs seek declaratory and injunctive relief—not monetary relief. As such, the participation of individual members of the Plaintiff associations is not necessary.

11. Plaintiffs and their members have suffered these concrete harms, and with the Act currently in effect, this Court has jurisdiction to adjudicate this dispute under Article III of the Constitution.

12. The New Jersey Department of the Treasury's Division of Revenue and Enterprise Services is responsible under the Act for notifying employers of the number of employees and dependents for which an employer is required to pay a fee, and it is also required to inform employers how to pay the fee to the Division of Revenue and Enterprise Services.

13. The New Jersey Department of Labor and Workforce Development is responsible under the Act for deciding any dispute or appeal lodged by an employer regarding the validity or amount of the fee assessed by the Division of Revenue and Enterprise Services.

14. Defendant Aaron Binder is the New Jersey State Treasurer, and he has an office located at 50 West State Street, Trenton, New Jersey.

15. Defendant Kevin D. Jarvis is the Acting Commissioner of the New Jersey Department of Labor and Workforce Development, and he has an office located at 1 John Fitch Plaza, Trenton, New Jersey.

16. As the State officials with ultimate responsibility for administering the Act, Defendants Binder and Jarvis are sued in their official capacity. The relief requested in this action is sought against Defendants, as well as against any subordinate officers, employees, agents, and other persons acting in cooperation with Defendants and under their supervision, at their direction, and/or under their control.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this case arises under ERISA and the United States Constitution.

18. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57.

19. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendants are government officials who perform their official duties in this Judicial District and because a substantial part of the events giving rise to Plaintiffs' claims have occurred in this Judicial District.

## THE EMPLOYER HEALTHCARE ASSISTANCE CONTRIBUTIONS ACT

20. The Act requires private sector employers to pay a fee if they employ 50 or more employees who receive health benefits coverage through New Jersey's Medicaid program. Specifically, Section 1 of the Act provides that:

> (c) The fee to be imposed on an employer shall be determined based on the number of employees, and dependents of employees, who receive health benefits coverage through the State Medicaid program pursuant to P.L.1968, c.413 (C.30:4D-1 et seq.)

on December 31 preceding the date employers are notified of their liability under this section pursuant to subsection e. of this section as follows:

> (1) for an employer with at least 50 but fewer than 250 employees who receive health benefits coverage through the State Medicaid program pursuant to P.L.1968, c.413 (C.30:4D-1 et seq.), $325 for each employee, and for each of the employee's dependents, who receives State Medicaid benefits;
>
> (2) for an employer with at least 250 but fewer than 500 employees who receive health benefits coverage through the State Medicaid program pursuant to P.L.1968, c.413 (C.30:4D-1 et seq.), $525 for each employee, and for each of the employee's dependents, who receives State Medicaid benefits; and
>
> (3) for an employer with 500 or more employees who receive health benefits coverage through the State Medicaid program pursuant to P.L.1968, c.413 (C.30:4D-1 et seq.), $725 for each employee, and for each of the employee's dependents, who receives State Medicaid benefits.

21. Section 1(a) of the Act defines a "Dependent" as "an employee's spouse, civil union partner, or domestic partner, an unmarried child of the employee who is less than 31 years of age and lives with the employee in a regular parent-child relationship, or an unmarried child of the employee who is not less than 31 years of age and is not capable of self-support. *Id.* "'Child of the employee' includes any child, stepchild, legally adopted child, or foster child of the employee, or of a domestic partner or civil union partner of the employee, who is reported for health benefits coverage through the State Medicaid program pursuant to P.L.1968, c.413 (C.30:4D-1 et seq.) and dependent upon the employee for support and maintenance." *Id.*

22. The Act excludes from the fee assessment employees and dependents who are covered by Medicaid due to a developmental disability, an intellectual disability, or a permanent physical disability. *See* Act § 1(d).

23. It also provides that, "[b]eginning on July 1, 2027, the following employees who receive health benefits coverage through the State Medicaid program shall be excluded from the requirements of this section:

> (1) an employee of the employer who has been employed by the employer for less than 90 days at the time the fee is determined pursuant to subsection c. of this section;
>
> (2) an employee who works part-time, on a per diem basis, or who is a temporary employee; or
>
> (3) a seasonal employee.

Act § 1(j). The Act does not define what constitutes a "part time," "per diem," "temporary," or "seasonal" employee. After July 1, 2027, employers can apply for a credit or refund of the fees the employers paid during the prior year (July 1, 2026 through June 30, 2027) for these employees. *Id.*

24. With regard to the assessment and payment of the fee, the Act provides that "[o]n or before March 1 of each year, the [Division of Revenue and Enterprise Services] . . . shall notify an employer that the employer is required to pay the fee imposed under this section and to file information to facilitate the processing and tracking of such payment. **<u>The notification provided by the division shall indicate the number of employees, and dependents of the employees, who receive health benefits coverage through the State Medicaid program</u>** pursuant to P.L.1968, c.413 (C.30:4D-1 et seq.), for which an employer is required to pay the fee. . . . All payments and filings shall be due on or before April 15." Act § 1(e) (emphasis added).

25. If an employer fails to pay the fee, the employer is subject to a penalty of up to $500 per day. Act §1(f).

26. Describing the administrative appeal process, Section 1(g) of the Act states:

> An employer may dispute the determination that the employer is required to pay the fee established pursuant to this section by filing an appeal with the [D]epartment for a review of that determination . . . An employer shall file the appeal in accordance with rules adopted pursuant to section 3 of this [A]ct and shall submit data satisfactory to the [D]epartment to demonstrate that the assessment of the fee was incorrect; provided, however, the employer shall remit the fee as required by subsections b. through e. of this section pending the disposition of the appeal.

**COUNT I - ERISA PREEMPTION**

27. Plaintiffs repeat and reallege each allegation contained in the above paragraphs as if fully set forth herein.

28. Governor Sherrill described the Employer Healthcare Assistance Contributions Act as being intentionally designed to require employers to provide healthcare coverage for their employees:

> Instead of asking taxpayers to foot that bill, this budget looks to large employers. *It asks any company with 50 or more employees on Medicaid . . . to cover their workers, which they should do anyway,* or pay a fine.

Governor Sherrill Fiscal Year 2027 Budget Address (Mar. 10, 2026), https://www.nj.gov/governor/news/2026/20260310a.shtml (emphasis added).

29. The New Jersey Office of Legislative Services also expressly recognized the intent and effect of the law to alter the coverage provided under employer-sponsored healthcare plans. It concluded that "employers' responses to the new fees, *such as enhancing offers of employer-sponsored health coverage (potentially reducing Medicaid enrollment among employees subject to the fee)* . . . could result in indeterminate downward adjustments to the anticipated State revenue increases." *See* N.J. Legislature, *Legislative Fiscal Estimate* at 3 (July 6, 2026) https://pub.njleg.state.nj.us/Bills/2026/A5500/5324_E1.PDF (emphasis added).

30. Congress enacted ERISA in 1974 to establish a uniform national framework for sponsoring, administering, protecting, and regulating employee benefit plans, including private sector health and welfare plans. In enacting ERISA, Congress undertook a "careful balancing" to encourage the creation of employee benefit plans and "to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place." *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (alterations in original) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)).

31. ERISA is a comprehensive and highly reticulated statute intended to eliminate inconsistent state or local regulation of employee benefit plans. As the Supreme Court has concluded, "ERISA 'induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred.'" *Id.* (alteration in original) (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002).

32. To foster uniform national standards and administration, ERISA Section 514(a) contains a broad preemption clause that expressly supersedes state and local laws that "relate to" employee benefit plans. 29 U.S.C. § 1144(a). ERISA's preemption provision evidences Congress's intent to make the regulation of employee welfare benefit plans "exclusively a federal concern." *See Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 321 (2016).

33. "[A] state law relates to an ERISA plan if it has a connection with or reference to such a plan." *Egelhoff v. Egelhoff*, 532 U. S. 141, 147 (2001) (internal quotation marks omitted).

34. A state law has an impermissible "connection with" ERISA-covered plans, and thus is preempted, if the state law governs "a central matter of plan administration" or "interferes with

nationally uniform plan administration." *Id.* at 147-48. Congress specifically sought to ensure employers did not have "to tailor substantive benefits [offered to employees] to the particularities of multiple jurisdictions." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86 (2020). A state law also is preempted if the "acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage." *Gobeille*, 577 U. S., at 320 (internal quotation marks omitted)

35. A state law impermissibly references ERISA plans when it "acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation[.]" *Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U. S. 316, 325 (1997)

36. Where, as is the case here, a state seeks to force employers "to spend more money on employee health benefits and thus reduce [employees'] reliance on Medicaid," the state law "directly clashes with ERISA's preemption provision and ERISA's purpose of authorizing [employers] to provide uniform health benefits to its employees on a nationwide basis." *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 198 (4th Cir. 2007).

37. The Act, intentionally and by operation, requires private sector employers to offer and/or tailor their health plans that are covered by ERISA to provide coverage not only to their employees, but also spouses/domestic partners and dependents (even unmarried children up to age 31). The economic effects of the Act – both direct and indirect – impermissibly force a private sector employer to adopt a certain scheme of substantive healthcare coverage.

38. For employers that operate both in New Jersey and other states, the Act would require them, to avoid the fee assessment, to provide health care coverage different from healthcare coverage provided to employees in other states, leading to a patchwork of state-by-state regulation,

rather than application of national standards and administration. *See Rutledge,* 592 U.S. at 86 (concluding that ERISA preempts laws that would require employers "to tailor substantive benefits to the particularities of multiple jurisdictions."). By way of example, the Act defines a "dependent" as including unmarried grown adults up to age 31, whereas many healthcare plans nationwide define a "dependent" as only including a child up to age 26—as specified in the Patient Protection and Affordable Care Act passed by Congress in 2010. *See* 45 C.F.R. § 147.120(a)(1) ("A group health plan, or a health insurance issuer offering group or individual health insurance coverage, that makes available dependent coverage of children must make such coverage available for children until attainment of 26 years of age.").

39. The Act conflicts with ERISA's carefully constructed federal framework and is expressly preempted by ERISA § 514(a), 29 U.S.C. § 1144(a), because it has an impermissible connection with ERISA-covered employee health plans by virtue of dictating the plan benefits and eligibility. The Act thus "relates to" ERISA-covered plans and is preempted.

40. In addition, the Act conflicts with and is preempted by ERISA because it impermissibly conflicts and interferes with the uniform national administration of benefits plans by imposing on an employer different health care obligations for its employees in New Jersey than owed to their employees elsewhere in the country, another impermissible connection with ERISA-covered plans that results in preemption. And, the State still would assess the fee even if the employer satisfied federally-established standards for employer-sponsored healthcare coverage.

41. Finally, the Act imposes requirements exclusively on employers that sponsor ERISA-covered plans. The Act does not apply to the State or other government employers within

the State whose benefit plans are not covered by ERISA. Because the Act would have no meaning at all but for the existence of the ERISA-covered plans, the Act has an impermissible reference to ERISA-covered plans and is preempted.

## COUNT II - VIOLATION OF DUE PROCESS

42. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if fully set forth herein.

43. The Fourteenth Amendment to the United States Constitution provides that no state "shall . . . deprive any person of life, liberty, or property, without due process of law".

44. Procedural due process under the Fourteenth Amendment requires the State to provide a meaningful opportunity for the employer to obtain a determination of the accuracy and validity of the fee assessed against the employer.

45. The void-for-vagueness doctrine "addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

46. Under the Act, in assessing the fee, the State only reveals to the employer the purported number of employees and/or dependents who received State Medicaid benefits.

47. The Act does not identify how and from what source the State will identify the purported number of employees and dependents.

48. The Act prohibits the State from providing the names of the employees and dependents for whom the employer is being assessed the fee.

49. The Act does not require the State to identify whether any employee or dependent actually incurred a medical claim and received Medicaid benefits from the State.

50. In industries where the same employee may work for multiple employers, there is no mechanism under the Act for preventing multiple employers from being charged what is supposed to be an annual fee tied to a single employee and their dependents.

51. When both parents work for different employers, the Act provides no mechanism for preventing multiple employers from being charged a fee for the same dependents.

52. The Act's administrative appeal process places the burden of proof on the employer, but the employer has no means of determining for which employees and dependents the State is assessing a fee against the employer. *See* Act § 1(g) (describing administrative appeal process). Further, there are a multitude of reasons why an employee or a dependent may receive Medicaid benefits that have nothing to do with the employer or the employer's health plan. And, the State still would assess the fee even if the employer satisfied federally-established standards for employer-sponsored healthcare coverage.

53. As such, the Act lacks the procedural safeguards required under the Due Process Clause and is also void for vagueness.

54. The Act is null and void as it violates the Due Process Clause of the Fourteenth Amendment.

**COUNT III - FEDERAL SUPREMACY CLAUSE**

55. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if fully set forth herein.

56. Under the Act, in assessing the fee, the State only reveals to the employer the purported number of employees and/or dependents who received State Medicaid benefits.

57. The Act does not identify how and from what source the State will identify the purported number of employees and dependents.

58. The Act prohibits the State from providing the names of the employees and dependents for whom the employer is being assessed the fee.

59. The Act does not require the State to identify whether any employee or dependent actually incurred a medical claim and received Medicaid benefits from the State.

60. The Act provides that an employer may only dispute the fee assessment—after first paying it—by filing an appeal with the New Jersey Department of Labor and Workforce Development and submitting "data satisfactory to the [D]epartment to demonstrate that the assessment of the fee was incorrect[.]" *See* Act § 1(g).

61. The Act places on the employer the burden of proving that the assessment was incorrect, but an employer does not know whether its employees – or the dependents of its employees – are enrolled in Medicaid or the reasons why employees or dependents may be enrolled in Medicaid (e.g., income level, physical disability, intellectual disability, etc.). *Id.*

62. In vindicating their appeal rights, employers subject to the Act's fee assessment would need to question any and all employees who declined anything other than "family coverage" option under the employer's own healthcare plan so as to determine whether (a) the employee is on Medicaid; (b) the employee has any dependents on Medicaid; (c) the employee or dependent actually incurred a medical claim and received Medicaid benefits from the State; (d) whether the employee or any dependent has a developmental, intellectual, or physical disability that would

exempt the employer from the fee assessment; and (e) the dependents are 31 years or older and not capable of self-support so as to qualify as a dependent under the Act.

63. The Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.*, limits the questions an employer may ask potential hires about disability, as well as the questions that an employer may ask an existing (already hired) employee regarding disability.

64. As stated in guidance issued by the Equal Employment Opportunity Commission ("EEOC"), under the ADA, an employer generally can only ask disability-related questions and/or require a medical exam of an existing employee "if the employer needs medical information to support an employee's request for an accommodation or if the employer has objective evidence that an employee is not able to perform a job successfully or safely because of a medical condition." EEOC, *Disability Discrimination and Employment Decisions*, https://www.eeoc.gov/disability-discrimination-and-employment-decisions (last visited Aug. 19, 2026). Neither exception is applicable here.

65. Likewise, the Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. § 2000ff *et seq.*, generally prohibits employers from obtaining—or even inquiring about—"genetic information," which expressly includes "information about the manifestation of a disease or disorder in an individual's family members (i.e. family medical history). Family medical history is included in the definition of genetic information because it is often used to determine whether someone has an increased risk of getting a disease, disorder, or condition in the future." *See* EEOC, *Genetic Information Discrimination* https://www.eeoc.gov/genetic-information-discrimination (last visited Aug. 19, 2026). GINA does not allow an employer to question employees about family medical history to avoid a fee assessment.

66. Put simply, the Act provides an illusory appeal right to employers, leaving them a Hobson's Choice: the employer must (a) pay the assessed fee, or (b) violate federal laws, such as the ADA and GINA, while pursuing the administrative appeal and questioning its employees regarding their or their dependents' Medicaid coverage and grounds for it.

67. These few examples reveal that the Act conflicts with federal law. Under the Supremacy Clause of the United States Constitution the Act is unlawful and void.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Declare that the Act is preempted by the Employee Retirement Income Security Act of 1974;

B. Declare that the Act violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

C. Declare that the Act otherwise conflicts with federal law and is void under the Supremacy Clause of the United States Constitution;

D. Enjoin Defendants as well as any subordinate officers, employees, agents, and other persons acting in cooperation with Defendants and under their supervision, at their direction, and/or under their control from implementing or enforcing any of the requirements under the Act; and

E. Grant such additional or different relief as the Court may deem appropriate.

Dated: August 20, 2026

Respectfully submitted,

*/s/ William J. Delany*
William J. Delany, N.J. Bar No. 049031994
Michael J. Prame (*pro hac vice* forthcoming)
Mark C. Nielsen (*pro hac vice* forthcoming)
Groom Law Group, Chartered

1701 Pennsylvania Ave. NW
Washington, D.C. 20006
Tel: (202) 867-0620
Fax: (202) 659-4503
wdelany@groom.com
mprame@groom.com
mnielsen@groom.com